[No. 23553. Department One. April 12, 1932.]

THE STATE OF WASHINGTON, *Respondent*, v. A. C. JOHNSON *et al.*, *Appellants*.[1]

*Sam R. Sumner* and *Harvey F. Davis*, for appellants.

*J. A. Adams* and *Sam M. Driver*, for respondent.

*LaBerge, Cheney & Hutcheson*, Amici Curiae.

MITCHELL, J.—A. C. Johnson and H. E. Kiehl were prosecuted and convicted upon an amended information filed in the superior court for Chelan county, the charge being in substance that, in that county, on February 27, 1931, they unlawfully and feloniously, without the permission of the person entitled to the possession thereof, to-wit: Thomas Tire Service, Inc., intentionally took and drove away a motor vehicle (truck), which corporation at the time lawfully held the truck in its garage for storage purposes and to secure the payment of the storage charges.

[1]Reported in 9 P. (2d) 1089.

The prosecution was grounded on Rem. Comp. Stat., § 2601-1, which reads, for the purposes of this case, as follows:

"Every person who shall without the permission of the owner or person entitled to the possession thereof intentionally take or drive away any automobile or motor vehicle, . . . the property of another, shall be deemed guilty of a felony. . . ."

The defendants have appealed from a judgment on the verdict against them.

The state's proof was that a corporation in Wenatchee, the owner of the motor truck in question, sold it on conditional sale contract to Charles Hardin, a resident of Grant county, the contract providing that time was of the essence of the contract, and, among other things, that, if the purchaser defaulted in any payment, the seller or his assignee should have the option to take immediate possession of the property, with or without legal process, wherever found, and that the purchaser waives notice of forfeiture and demand for possession. The contract was duly assigned and delivered by the seller to the Commercial Credit Company, doing business in Seattle, and thereafter Hardin made payments to the assignee regularly until the one due on January 25, 1931, which he failed to pay, saying he was unable to do so at that time.

Thereafter, February 27, 1931, the appellants, as agents for the owner of the truck, having specific authority therefor, called on Hardin at his home, telling him they had come to collect the payment overdue or to take the truck. He still claimed that he could not pay and objected to giving up the truck. Considerable controversy occurred, and upon attempt on the part of the appellants to physically take possession of the truck, Hardin drove them off with threats and the display of a shot gun brought out of his house.

Appellants went back to Wenatchee, and shortly afterwards and on the same day, Hardin drove the truck to Wenatchee and put it in a public garage belonging to the Thomas Tire Service, Inc., for a few hours while he was about the city. Within a short time, and on the same day, appellants, still acting under the directions of the Commercial Credit Company, the owner of the truck, and without objection, protest or opposition on the part of anyone, in the daytime and while the garage was open for business, took the truck out and placed it in another garage in Wenatchee. The storage fee due the Thomas Tire Service, Inc., was thirty-five cents.

At the close of the state's case, appellants moved for a dismissal for failure of proof sufficient to sustain any verdict against them. The motion was denied.

For the purposes of this case, and within the statute involved, the appellants, as agents of the owner, were the owners of the truck. The statute says that the motor vehicle intentionally taken or driven away without permission of the owner or person entitled to possession thereof shall be "the property of another." The truck was not the property of another. It belonged to one for whom the appellants acted as agents in repossessing it, which was accomplished by them without any violence or breach of the peace.

The state parallels the case to its satisfaction in this respect by *State v. Nelson,* 36 Wash. 126, 78 Pac. 790, 68 L. R. A. 283, 104 Am. St. 945. In that case, the owner of horses, after having incurred livery and boarding stable charges against them in the sum of four dollars each, broke into the barn at night, took and drove the horses away. He was charged with a burglarious entry with intent to commit larceny. At once the question arose whether one could steal his own property. This court mentioned the rule that one

person may be the general owner of a chattel and another have a special property in it, and applied the rule of special property to the extent of the value of the feed the stable keeper had furnished the horses and the care he had given them, because,

"The theory of the law is that he had added that much to the value of the owner's property, and that added value became property in himself, secured by the possession of the animals. To have taken the animals from him, under the fraudulent and unlawful circumstances alleged in the information, would have been to feloniously deprive him of his property."

That is, the stable keeper had *added* to the value of the horses, and that *added* value was the property of the one who had created it, and might be treated as his property and, as such, the subject of larceny, even at the instance of the real owner of the horses.

This is not that kind of a case. It cannot be held that services, the charge for which was thirty-five cents, for keeping an inanimate chattel like a motor truck, do or can add anything to the value of the truck becoming or amounting to property special or other kind that could be taken or driven away.

Beyond this consideration of the ownership of the truck, this statute was not intended, in our opinion, to embrace a case like this. It is plain, indeed, there can be no fair inference from the testimony to the contrary, that all the appellants attempted to do was to peaceably get possession of the truck, which they were entitled to, at that time, under the terms of the conditional sale contract. What is there in this case to suggest that they had criminal or felonious intentions against the garage owner with reference to its possession of the truck? Nothing tangible or substantial, as we view the evidence.

There is a difference between the letter and the spirit

of the law. As suggested by counsel, if the rule the state prefers shall prevail, it means that, if one lend his motor vehicle to a friend for an hour, and during that time the friend momentarily leave it on his own residence property, during which time the real owner, without permission of his friend, intentionally take or drive it away, the owner would be a violator of the law and guilty of a felony.

As early as centuries ago, according to the books, it was decided that a statute which provided "that whoever drew blood in the streets should be punished with the utmost severity," was not violated by a surgeon who opened the vein of a person that fell down in the street with a fit.

It might with considerable effect be argued that the statute involved in the present case was enacted against what in common speech is designated "joy riding," or other similar misconduct, but not the present kind of transaction.

The motion for dismissal at the close of the state's case should have been granted. Remanded, with directions to the trial court to grant the motion and dismiss the action.

TOLMAN, C. J., PARKER, HERMAN, and BEELER, JJ., concur.